Filed 1/11/23  In re T.G. CA1/5
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re T.G, a Person Coming Under the Juvenile Court Law. | |
| MARIN COUNTY HEALTH & HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>L.G.,<br><br>        Defendant and Appellant. | A164680<br><br>(Marin County Superior Ct. No. JV27156A) |

Appellant L.G. appeals from a juvenile court order placing his son, T.G., in a short-term residential group home instead of appellant's own care. Under Welfare and Institutions Code[1] section 361.2, subdivision (a), appellant argues that no substantial evidence supports the court's determination that placing T.G. with appellant would be detrimental to the child's well-being.  We disagree and affirm.

## I.  BACKGROUND

Respondent Marin County Health and Human Services filed a juvenile dependency petition for T.G. on October 28, 2021.  At the time, the

_____

[1] All subsequent references to statute are to the Welfare and Institutions Code, unless otherwise noted.

1

10-year-old lived with mother N.S. and for about nine months had been in weekly contact with his father, appellant. In the course of the investigation underlying the petition, police and social workers discovered extensive evidence that T.G. had suffered from his mother's neglect. He had not been enrolled in school, had recently run away from home and slept outside overnight, and had set fires in the apartment complex where he then resided.

When police responded to mother's home to investigate the fires, they found the apartment "filthy." The refrigerator held moldy and expired food, and dirt or rodent droppings were visible on the floor. Respondent also learned that T.G. had not been taken to a doctor in years and had never seen a dentist. As a result of the latter, T.G. had " 'a very large black cavity in a rear upper tooth, with part of that tooth broken off.' " As well, " 'two other teeth [had] cavities in them,' " something which could "be easily seen by just looking in his mouth." According to mother, appellant had purchased glasses for T.G. to correct his blurred vision, but those had gone missing more than a year earlier and were never replaced. The dependency petition noted appellant's admission that "he was concerned about [T.G.'s] well[-]being in [mother's] care but [had] failed to seek legal custody or take other actions to ensure [T.G.'s] basic needs were met."

T.G. was placed in a confidential Marin County licensed resource home. Although he was "visibly comfortable in the home and with the resource parent," T.G.'s stay at the resource home was not without incident. On one occasion, when the resource parent set limits on T.G.'s behavior, T.G. "got upset and appeared to have a tantrum by yelling, throwing [a] video game controller at the resource parent, stomping on the floor, running to his room and slamming the door." The resource parent reported that T.G.

"inappropriately hits or punches others"—including classmates and the resource parent—"even when asked not to" do so. Finally, T.G. would not "bathe properly, . . . brush his teeth, . . . flush the toilet," or refrain from urinating on the floor. In short, he "require[d] 100% attention . . . at home and . . . at school."

Consequently, T.G. was placed in a short-term residential therapeutic program (STRTP) at St. Vincent's School for Boys. There, T.G. would be in the care of professionals charged with addressing his childhood development trauma, undergo psychological evaluation, and have his educational needs assessed. In a virtual visit with his mother, T.G. "appeared 'happy and excited,' showing [her] where [the school's] horses were and saying that he liked St. Vincent's." However, T.G. also experienced further behavioral problems, including incidents where he "[b]anged his head" on his bedroom wall and had to be "escorted to the sensory room."

After a contested disposition hearing featuring testimony from appellant and the social worker assigned to T.G., the juvenile court determined that removing T.G. from St. Vincent's and placing him with appellant would be detrimental to T.G. under section 361.2, subdivision (a). That determination was based on several factors: appellant's "failure to protect" T.G. from his mother's neglect; T.G.'s "profound needs" and appellant's apparent failure to acknowledge those; appellant's "extensive history involving substance abuse," including "at least five DUIs"; his refusal to take a drug test when asked to do so by the social worker; his similar refusal to take parenting classes; and a generally evasive, uncooperative

3

posture adopted by appellant with respect to the social worker and the juvenile court.[2]

Arguing that the juvenile court's order was unsupported by substantial evidence, appellant filed this appeal.

## II. <u>DISCUSSION</u>

Where a child has been removed from a parent's custody under section 361 and another, non-custodial parent requests custody, section 361.2, subdivision (a), requires the juvenile court to place the child with the latter parent, unless the juvenile court finds that such a placement "would be detrimental to the safety, protection, or physical or emotional well-being of the child." In determining whether such a detriment would result, the juvenile court must "weigh all relevant factors to determine if the child will suffer net harm." (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1425 (*Luke M.*).) "Only clear and convincing evidence can establish the necessary detriment." (*In re A.C.* (2020) 54 Cal.App.5th 38, 43.)

"Our role is limited because our review of the juvenile court's detriment finding is deferential." (*In re A.C.*, *supra*, 54 Cal.App.5th at p. 43.) "We review the record in the light most favorable to the court's order to determine whether there is substantial evidence from which a reasonable trier of fact

---

[2] An illustrative example of this posture concerns appellant's residence. Initially, he told the social worker that he had "an 'apartment' that he lease[d]." Later, when he provided his address to the juvenile court, the court noted that the address was to a yacht harbor and appellant confirmed that he lived on a boat. Appellant subsequently testified that he has an "arrangement" with a friend who owns the boat: Appellant pays the dock fee and maintains the boat and in turn, can stay there "as long as necessary." That arrangement appears to be an informal one; when the social worker asked appellant to show her a rental agreement or permit her to speak to the harbormaster, appellant refused.

4

could find clear and convincing evidence that the children would suffer such detriment." (*Luke M.*, *supra*, 107 Cal.App.4th at p. 1426.)

Here, the trial court's determination that it would be detrimental to place T.G. in appellant's custody is supported by the following evidence. First, as appellant's counsel conceded, appellant "failed to protect [T.G.] from [T.G.'s] mother" in the years when T.G. suffered from her neglect. Second, appellant has a history of substance abuse, including five convictions for driving under the influence of alcohol or drugs. Third, appellant was to a great degree uncooperative with the social workers assigned to T.G.—refusing to be tested for drug use, to attend parenting classes,[3] and to produce a rental agreement or grant permission for the social worker to discuss appellant's living situation with the harbormaster where appellant lives on a friend's houseboat.[4]

Fourth, T.G. has several serious behavioral problems that might pose a significant challenge to any father. When staying with a resource parent, T.G. threw tantrums—throwing a video game controller at the resource parent, stomping on the floor, running to his room, and slamming the door. He refused to wash or brush his hair, brush his teeth, or flush the toilet, and he would urinate on the floor. Similar behavior continued after T.G. was placed at St. Vincent's. When a social worker asked appellant how he might deal with such challenges, appellant seemed to minimize them, saying that

---

[3] Appellant testified that in 2010 at the Salvation Army, he underwent a six-month drug treatment program which included parenting classes. We note that he suffered yet another DUI conviction in 2018, and that the parenting classes did not prevent appellant's failures with respect to T.G., who was born in 2010.

[4] We reject appellant's framing of this evidence, which suggests that his "[p]overty" was found to be "a sufficient basis to deny" him custody. The salient fact here is not appellant's living situation, but his lack of candor.

T.G. "would never do that with me." The record, however, indicates otherwise. For example, while T.G. was living with his mother in 2021, he avoided spending a planned weekend with his father by running away and sleeping in the rain behind his mother's apartment building.

In sum, appellant failed to intervene when T.G. endured mistreatment in his mother's custody, he abused controlled substances, and he refused to attend the parenting classes or undergo the drug testing reasonably called for by that history. He has also been uncooperative in other ways with social services personnel attending to the welfare of his child. Crucially, appellant seemed to minimize the scale and gravity of T.G.'s ongoing problems. Taken together, these facts constitute substantial evidence showing that to place T.G. with appellant "would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).)

In arguing against that conclusion, appellant relies on several cases, all of which are distinguishable. *In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1263 (*Patrick S.*), for example, dealt with a father who had "no criminal history, no referrals to child welfare services and no indication of substance abuse or mental illness"—something that cannot be said of appellant.[5] The evidence of detriment in *In re John M.* (2006) 141 Cal.App.4th 1564, 1570, was not substantial because it was limited to the child's "need for services, his lack of a relationship with [the father], and the paucity of information

---

[5] In *Patrick S.*, the Fourth District concluded that "there [was] not substantial evidence to show that Patrick could not meet [his son's] therapeutic needs" immediately *after* it discussed father's paternal qualifications, including the ones we have highlighted here. (*Patrick S.*, *supra*, 218 Cal.App.4th at pp. 1263–1264.) Thus, when appellant suggests that the record here displays a comparable lack of "substantial evidence that the child's short[-]term needs could not be addressed," he ignores the very different factual context upon which the holding in *Patrick S.* was based. In short, *Patrick S.* is distinguishable.

about" the father; here, on the other hand, there is an abundance of information about appellant and his apparent unwillingness to cooperate with his son's social workers. Similarly, the evidence of a father's drug problem in *In re C.M.* (2014) 232 Cal.App.4th 1394, 1403–1404, was an unsubstantiated allegation made by a mother whose "mental health issues made her a questionable reporter on the issue." Here, such evidence appears in DUI convictions as recent as 2018—well after appellant's 2010 participation in a Salvation Army drug treatment program—along with appellant's resistance to drug testing.

Nor are we persuaded by appellant's other arguments. For example, there is evidence that T.G. wishes to live with appellant, but although relevant, such "wishes are not dispositive." (*In re A.C.* (2020) 54 Cal.App.5th 38, 43.) Appellant further argues that "the record reflects" his attempt "to do what he could within the limitations imposed on him given mother's resistance and his lack of presumed father status." At most, this argument presents a rival interpretation of the evidence, of little help to us in our endeavor to "consider the record most favorably to the juvenile court's order, and affirm the order if supported by substantial evidence even if other evidence supports a contrary conclusion." (*In re Liam L.* (2015) 240 Cal.App.4th 1068, 1087.)

Finally, we emphasize that our conclusion does not rest on any single line of evidence set forth above, but instead, on the whole of that evidence. As the juvenile court observed, "[m]any of the cases" dealing with section 361.2 "say, well, you can't [find detriment] for this reason or . . . for that reason. I'm not doing it for any one of those reasons . . . . I am doing it based on the totality." In reviewing that totality, we find that it meets the "substantial evidence" standard operative here.

## III. DISPOSITION

We affirm.

_____

Wiseman, J. [*]


We concur:



_____

Jackson, P.J.



_____

Simons, J.





*In re T.G.* / A164680

_____

[*]     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.